THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:19-cv-00322-MR-WCM

| | |
|---|---|
| TONYA MICHELLE CHAMBLESS, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ANDREW SAUL, ) <br> **Commissioner of Social Security,** ) <br> ) <br> Defendant. ) <br> _____ ) | **O R D E R** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgement [Doc. 10] and the Defendant's Motion for Summary Judgement [Doc. 14].

**I.    BACKGROUND**

On October 24, 2006, the Plaintiff, Tonya Michelle Chambless ("Plaintiff"), was determined to be disabled under the Social Security Act (the "Act") beginning on March 24, 2006. [Transcript ("T.") at 15]. The Plaintiff's disability was determined to continue in another decision on October 4, 2012. [Id.]. On November 10, 2015, the Plaintiff was determined to no longer be disabled beginning November 1, 2015, a decision which was upheld upon reconsideration. [Id.]. On the Plaintiff's request, a hearing was held on June

20, 2018, before an Administrative Law Judge ("ALJ"). [Id.]. On October 25, 2018, the ALJ issued a written decision finding the Plaintiff was no longer disabled under the meaning of the Act beginning on November 1, 2015. [Id. at 15-26].

On September 10, 2019, the Appeals Council denied the Plaintiff's request for review thereby making the ALJ's decision the final decision of the Commissioner. [Id. at 6]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). When reviewing a Social Security Administration determination to terminate disability benefits, or in any disability determination, the reviewing court must "'uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" See Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (quoting Bird v. Comm'r, 699 F.3d 337, 340

(4th Cir. 2012)); 42 U.S.C. § 423(f). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). Substantial evidence "consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson, 810 F.3d at 207 (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports

3

his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

## III. THE PROCESS FOR DETERMINING CONTINUING DISABILITY

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In the initial disability determination, the Commissioner uses a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015).

Once a claimant has been granted Social Security disability benefits under Title II, the Commissioner must periodically review the claimant's condition to determine if there has been any "medical improvement" so that the claimant is no longer disabled. 20 C.F.R. § 404.1594(a). A "medical improvement" is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable

medical decision that [the claimant] was disabled or continued to be disabled." 20 C.F.R. § 404.1594(b)(1); see Smiley v. Saul, No. 1:19-cv-00163-MOC-WCM, 2020 WL 3261010, at *1 (W.D.N.C. May 15, 2020), report and recommendation adopted, 2020 WL 3259541 (W.D.N.C. June 16, 2020). When a medical improvement review is done, the most recent favorable medical decision is referred to as the "comparison point decision" ("CPD"). See Livingston v. Colvin, No. 3:13-cv-00233-MOC, 2014 WL 496484, at *3 (W.D.N.C. Feb. 6, 2014). A finding of a decrease in medical severity "must be based on improvement in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." 20 C.F.R. § 404.1594(b)(1). In determining whether the plaintiff is still disabled, the ALJ must follow an eight-step evaluation process. Id. § 404.1594(f).

At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. If so, the claimant's disability is determined to have ended. Id. § 404.1594(f)(1). If not, the case progresses to step two, where the issue is whether the claimant has one or more impairments or combination of impairments that meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. § 404, Appendix 1 to Subpart P. If so, the claimant's disability is found to continue. Id. § 404.1594(f)(2). If not, the case proceeds to step three where the issue is

5

whether a "medical improvement" has occurred. Id. § 404.1594(f)(3). If there is a medical improvement, then step four requires the ALJ to determine if the improvement is related to the claimant's ability to work (i.e., has there been improvement to the claimant's residual functional capacity ("RFC")). Id. § 404.1594(f)(4). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. Social Security Ruling ("SSR") 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c).

The ALJ continues to step five if either there was no decrease in medical severity and no medical improvement found at step three or, if at step four, the ALJ did not find the medical improvement related to the claimant's ability to work. 20 C.F.R. § 404.1594(f)(5). At step five, the ALJ must determine whether any exceptions to medical improvement apply, if not the claimant is determined to continue to be disabled. The first group of exceptions concern whether the claimant has somehow benefited from "advances in medical or vocational therapy or technology" or "undergone vocational therapy" related to the claimant's ability to work. 20 C.F.R. § 404.1594(d). If this first exception applies, the ALJ goes to step six. Id. § 404.1594(f)(5). If the second group of exceptions (the disability was obtained

6

by fraud, the claimant does not cooperate, is unable to be found, or fails to follow prescribed treatment) apply, then the disability ends. 20 C.F.R. §§ 404.1594(e)(1)-(4); 404.1594(f)(5).

At step six, the ALJ must determine if all of the "claimant's current combination of impairments" are "severe" in reference to the claimant's RFC. Id. § 404.1594(f)(6). If so, then the ALJ proceeds to step seven. The ALJ then determines whether the claimant has an RFC that allows the claimant to do work that the claimant did in the past. Id. § 404.1594(f)(7). If the claimant can still perform his or her past work, then the claimant is not disabled. Otherwise, the case progresses to step eight, where the ALJ considers whether the claimant can perform alternative work in consideration of the claimant's age, education, past work experience, and RFC. Id. § 404.1594(f)(8). If the claimant can do alternative work than the disability ends, if not the disability continues. Id.

## IV. THE ALJ'S DECISION

At step one, the ALJ noted that the Plaintiff had not engaged in substantial gainful activity through the date of the decision. [T. at 17]. At step two, the ALJ found that the Plaintiff "has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment" in the Listings since November 1, 2015. [Id.]. Therefore, the

7

issue at step three became whether there was a "medical improvement." The ALJ compared the most recent favorable medical decision, the CPD, which was October 8, 2012, when the Plaintiff had the impairments of "mood disorder, anxiety, and personality disorder," to the Plaintiff's current condition. [Id.]. At step three, the ALJ concluded that a medical improvement occurred on November 1, 2015. [Id. at 19].

At step four, the ALJ found that the medical improvement "related to the ability to work because it resulted in an increase in the [Plaintiff]'s [RFC]." [Id. at 20].[1] Next, at step six, the ALJ determined that since November 1, 2015, the Plaintiff has continued to have a severe combination of impairments of "mood disorder, anxiety (panic disorder), PTSD, bipolar disorder, depression, personality disorder, seizure disorder, fibromyalgia, and cervical degenerative disc disease." [Id. at 20]. At step seven, the ALJ found that, notwithstanding the Plaintiff's impairments since November 1, 2015, the Plaintiff had the RFC:

> [T]o perform light work as defined in 20 C.F.R. 404.1567(b) except the [Plaintiff] can do no claiming [sic] of ladders and can have no exposure to unprotected heights or dangerous moving machinery. The [Plaintiff] cannot drive motorized vehicles. The [Plaintiff] is capable of simple routine tasks and instructions. The [Plaintiff] can have public contact for 10% of the workday or less. The [Plaintiff] can do no fast-paced production work, can tolerate

---

[1] The ALJ did not perform a step five analysis because it was not applicable to the Plaintiff's case. See 20 C.F.R. § 404.1594(f)(5).

8

occasional changes in work place and or work methods, and can concentrate on, focus and attend to work activities for at least two hours at a time before needing a normal break of 15 minutes, or once per day, a 30-minute meal break.

[Id.]. The ALJ also determined that the Plaintiff "has no past relevant work." [Id. at 24].

At step eight the ALJ concluded, considering the Plaintiff's age, education, work experience, RFC based on the Plaintiff's impairments present since November 1, 2015, and the testimony of the vocational expert ("VE), that the Plaintiff is "able to perform a significant number of jobs in the national economy." [Id. at 25-26]. The ALJ concluded that the Plaintiff was "not disabled" beginning on November 1, 2015, and the Plaintiff had not become disabled again. [Id. at 26].

## V. DISCUSSION[2]

The Plaintiff presents three assignments of error. In her first assignment of error, the Plaintiff argues the ALJ's RFC assessment fails to reflect the "great weight" the ALJ gave Dr. Salmony's opinion which included the determination that the Plaintiff had a "moderate limitation in her ability to understand and remember detailed instructions" but was able to understand and follow "short, simple instructions." [Doc. 11 at 10-12].

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

The RFC is "the most [a claimant] can do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ is responsible for determining a claimant's RFC, Id. § 404.1546(c), based on "all of the relevant evidence in the [claimant's] case record." Id. § 404.1545(a)(1). In forming the RFC, the ALJ "must both identify evidence that supports [her] conclusion and build an accurate and logical bridge from that evidence to [her] conclusion." Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) (brackets, emphasis, and internal quotation marks omitted); see also Monroe, 826 F.3d at 189.

The ALJ is not required to discuss every item of evidence in the record when determining the claimant's RFC. Reid v. Comm'r of Soc. Sec., 796 F.3d 861, 865 (4th Cir. 2014). However, the ALJ must address each "medical opinion" in the claimant's record and include a weight given to each opinion. Woods, 888 F.3d at 695. An ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." Mascio, 780 F.3d at 636 (citing Social Security Ruling 96-8p). Ruling 96-8p further provides, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical

source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7.

Therefore, if an ALJ assigns significant or great weight to a medical opinion, but implicitly rejects part of that opinion by failing to include a limitation in the RFC, the ALJ must explain the inconsistency. Ezzell v. Berryhill, 688 F. App'x 199, 201 (4th Cir. 2017); Nalley v. Saul, No. 1:18-cv-00301-FDW, 2019 WL 6598221, at *4–5 (W.D.N.C. Dec. 4, 2019) (collecting cases). An "ALJ's decision cannot be supported by substantial evidence when [s]he fails to adequately explain [her] rationale for rejecting the opinion of those whom [s]he otherwise gave great weight to in arriving at [her] decision." Lataures L. v. Comm'r of Soc. Sec., No. 4:18-CV-00067, 2020 WL 2066756, at *7 (W.D. Va. Mar. 27, 2020), report and recommendation adopted, No. 4:18-CV-00067, 2020 WL 2065872 (W.D. Va. Apr. 29, 2020) (quoting Warren v. Astrue, No. 2:08-cv-00003, 2008 WL 3285756, at *11 (W.D. Va. Aug. 8, 2008)).

Here, the ALJ considered Dr. Salmony's Mental Residual Functional Capacity Assessment (the "Assessment") in determining the Plaintiff's RFC and gave the Assessment and the rest of Dr. Salmony's statements "great

11

weight."[3] [T. at 24; T. at 380-82]. In the Assessment, Dr. Salmony concluded that the Plaintiff is "moderately limited" in her "ability to understand and remember detailed instructions" and her "ability to carry out detailed instructions." [Id. at 380]. Dr. Salmony's Assessment concluded generally that the Plaintiff could "understand and follow *short simple instructions*," and that she could "sustain attention to complete a small variety of tasks at a semi-rapid pace," and generally that the Plaintiff "appears capable of [simple, routine, repetitive, tasks] SRRTs." [Id. at 380 and 382] (emphasis added).

The ALJ found that there was no evidence that the Plaintiff is incapable of "following *one to two step instructions*." [Id. at 18] (emphasis added). The ALJ then concluded in the RFC that the Plaintiff is capable of capable of "*simple* routine tasks and *instructions*."[4] [Id. at 20] (emphasis

---

[3] The ALJ gave the opinion great weight because she found the opinion was "a product of a thorough review of all available medical evidence of record. . . [and] is consistent with the longitudinal record and was provided by a specialist familiar with agency policy and procedure." [T. at 24].

[4] The ALJ incorporated some of the limitations indicated by Dr. Salmony's Assessment but provided no explanation why she did not incorporate others. For example, Dr. Salmony's Assessment found that the Plaintiff was "moderately limited" in her "ability to interact appropriately with the general public," and her "ability respond appropriately to changes in the work setting." [T. at 380-82]. The ALJ's RFC assessment reflects these limitations by limiting Plaintiff's interactions with the general public to "10% of the workday or less" and limiting the Plaintiff to only "occasional changes in the work place and or work methods." [Id. at 20]. Other moderate limitations found in the Assessment were not addressed, but the Plaintiff does not present an assignment of error as to these.

added). The ALJ did not explain how she got to this conclusion in the RFC. There is no explanation at all as to how the ALJ progressed from "*short* simple instructions" and "one to two step instructions" to the higher reasoning level of "*simple* instructions." As such, the ALJ erred in not "build[ing] an accurate and logical bridge" from the evidence to the RFC even though the ALJ's perception of the Plaintiff's ability to follow instructions expanded. See Woods, 888 F.3d at 694.

This is not a harmless error as the unsupported RFC conclusion was provided as the hypothetical for the VE to allow the VE to determine if there were any jobs that the Plaintiff could perform in the national economy.[5] [T. at 53-53]. This error requires remand because the additional limitation of "short instructions" or the limitation of "one to two step instructions" would eliminate all of the jobs suggested by the VE. See Lawrence v. Saul, 941 F.3d 140, 143 (4th Cir. 2019) (distinguishing an RFC allowing for SRRTs from an RFC limiting the claimant to "short, simple instructions").

The ALJ concluded that the Plaintiff could perform the jobs of "checker I," "mail clerk non-post office," and "shipping and receiving weigher checker," all of which all have a GED reasoning level of 2 or 3. [T. at 25; T. at 54]. A

---

[5] The ALJ asked the VE whether a person with the Plaintiff's age, education, and work experience, with the Plaintiff's physical limitations, who can "comprehend and perform simple, routine tasks and instructions" would have work available. [T. at 53-54].

GED reasoning level of 2 requires the ability to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral *instructions*" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." DOT, App. C, 1991 WL 688902 (emphasis added). A GED reasoning level of 3 requires the ability to "[a]pply commonsense understanding to carry out *instructions furnished in written oral or diagrammatic form*" and to "[d]eal with problems *involving several concrete variables* in or from standardized situations." Id. (emphasis added).

The Fourth Circuit has found that there is an apparent conflict in a limitation of "short, simple instructions" and a GED level 2 reasoning such that the ALJ should address these limitations when making the determination. See Thomas v. Berryhill, 916 F.3d 207, 314 (4th Cir. 2019). Furthermore, there is clearly a conflict between being "moderately" limited in the ability to understand and remember detailed instructions and the level 2 reasoning requiring the ability to carry out detailed instructions. See Bailey v. Berryhill, No. 1:17-cv-00326-FDW, 2019 WL 1139498, at *4-5 (W.D.N.C. Mar. 12, 2019) (finding that the "moderate limitation" in the ability to "understand, remember and carry out detailed instructions" should have been included in the ALJ's hypotheticals to the VE to resolve the apparent conflict between the two).

14

The ALJ found that there is no evidence that the Plaintiff could not follow "one to two step instructions." [T. at 18]. The Defendant argues that this finding "is consistent with both the ALJ's mental-RFC finding and the ALJ's evaluation of Dr. Salmony's assessment." [Doc. 15 at 13]. Even assuming that it *might* be consistent, the ALJ has failed to explain how she arrived upon such a conclusion. Moreover, the RFC does not limit Plaintiff to one to two step instructions, it limits her to "simple routine tasks and instructions." That limitation is permissible under a GED level 2, but "simple one-or two-step instructions" is a requirement for a GED level 1 rather than a level 2. See DOT, App. C. 1991 WL 699702. The ALJ's RFC conclusion may be warranted, but the ALJ will need to explain why she rejected this part of Dr. Salmony's opinion to which the ALJ gave great weight. Furthermore, the ALJ will need to support with evidence the Plaintiff's ability to follow detailed instructions. The Plaintiff's inability to follow detailed instructions, however, would eliminate the possibility of the GED level 2 or 3 jobs that were suggested by the VE. See Henderson v. Colvin, 643 Fed. App'x 273, 277 (4th Cir. 2016) ("We note that there is an apparent conflict between an RFC that limits Henderson to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions."). Therefore, the ALJ's findings do not adequately explain how

15

she determined that the Plaintiff could perform jobs that require the ability to carry out detailed instructions.

The ALJ's narrative fails to reconcile the weight purportedly assigned to Dr. Salmony's medical opinion and the RFC. The record does not explain the inconsistency between the ALJ's determination that the Plaintiff is able to understand and follow one to two step instructions, a GED level 1, and the jobs indicated in the ALJ's opinion which require a GED level of 2 or 3. Accordingly, the matter is remanded. Because the Court finds that remand is necessary on this issue, the Court need not address the Plaintiff's other assignment of error, namely, that the ALJ did not properly follow the required process in evaluating the effect of the Plaintiff's fibromyalgia and that the ALJ did not give specific reasons for the weight awarded to the Plaintiff's testimony. As part of the overall reconsideration of the claim upon remand, the ALJ should, if necessary, also take into consideration the additional allegations raised by the Plaintiff.

## VI. CONCLUSION

For the reasons stated, remand is required. On remand, the ALJ shall properly weigh all medical opinions, conduct a function-by-function analysis to determine the Plaintiff's proper RFC looking at all evidence on the record, include VE testimony that corresponds with the Plaintiff's limitations to

16

determine what jobs, if any, are available to the Plaintiff, and adequately explain the decision in light of that evidence.

## ORDER

**IT IS, THEREFORE, ORDERED,** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED**, and that the Defendant's Motion for Summary Judgement [Doc. 14] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further proceedings consistent with this decision.

**IT IS SO ORDERED.**

Signed: September 17, 2020

Martin Reidinger
Chief United States District Judge